MARTIN and MERWIN, JJ., concurred.

Judgment affirmed, with costs.

---

ELIZA A. MARTIN, Appellant, *v.* CHARLES B. PEET and Others, Respondents.

*Contract — evidence that a promise was made for the benefit of a third person — failure to use the words " pay "or " liquidate " — promisor not liable to a third party.*

In order to establish a liability, against a party making a contract, to a third party not named therein, there must be a clear intention evinced to give a right of action to such third party.

In an action brought to charge the defendants with a liability growing out of a policy of insurance on the ground that they had assumed payment of the debts of the insurer, it appeared that the plaintiff was a beneficiary under a policy of

life insurance issued by the Equitable Accident Association, under the by-laws of which a member was entitled to receive such sum as might be realized from a single assessment levied upon the persons who were members of the association at the time when the accident happened, not exceeding the sum specified in the certificate of membership; that the insured sustained an accidental injury from which he died on May 10, 1889, and that on November 19, 1892, the plaintiff recovered a judgment upon the policy against the association which proved to be uncollectible; that on November 1, 1889, certain persons who, as the complaint alleged, were most largely interested in the management of the Equitable Accident Association, entered into a written contract with persons alleged to be interested in the United States Mutual Accident Association, by which such latter persons agreed that they or the United States Mutual Accident Association would reinsure the risks of the former company and take its business, the agreement containing a covenant upon the part of such latter parties that they (the parties of the first part thereto) would "indemnify and save harmless the said second parties and all other officers and directors of said association from any and all liability in connection with said association, except indebtedness of the said association to officers and directors. It is further agreed by said first parties that they will settle and adjust all liabilities of said association, and save said second parties harmless from any actions which may be brought wholly or in part by reason thereof, and that the parties of the second part will retain their positions respectively and act therein under the direction and control of the parties of the first part until such time as the affairs of the Equitable Accident Association can be wound up." The agreement in question nowhere contained a promise to "pay" or "liquidate" the debts of the Equitable Accident Association.

Upon the trial of the action evidence was given tending to show that the Equitable Accident Association had not been legally wound up and that the persons alleged to be most largely interested in its management had no interest, rights or privileges in it other than to a portion of the salary which went to the secretary. The answer denied that any assessment had ever been levied to pay the plaintiff's claim, and there was no proof that, at the time when the defendants made the promise in question, the parties of the second part, representing the Equitable Accident Association, were personally liable to the plaintiff for the amount of her claim against it.

*Held*, that the language of the agreement did not make the defendants liable for the plaintiff's claim;

That the agreement made by the defendants was one of indemnity, and was not intended as a contract to pay the claim of the plaintiff or that of any other person similarly situated.

Appeal by the plaintiff, Eliza A. Martin, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Broome on the 2d day of April, 1895, upon a nonsuit granted after a trial at the Broome Circuit before

the court and a jury, as such judgment was amended by an order entered in said clerk's office on the 27th day of April, 1895, and also from an order entered in said clerk's office on the 25th day of February, 1895, denying the plaintiff's motion for a new trial made upon the minutes.

This action was brought to charge the defendants with a liability growing out of a policy of insurance, on the ground that, by the terms of a written contract entered into between them and the insurer, they had assumed payment of the debts of the insurer.

*Carver, Deyo & Jenkins,* for the appellant.

*George F. Lyon,* for the respondents.

HARDIN, P. J.:

Plaintiff's complaint alleges that November 1, 1889, and for several years prior thereto, the Equitable Accident Association of Binghamton was a corporation organized under the laws of the State of New York engaged in an accident insurance business, and that during said time George W. Dunn and Frederick E. Ross were directors and James B. Arnold was secretary and manager, and David Murray was attorney for the association, " and that they were the persons most largely interested in the conduct and management of the business of said association, financially and otherwise." The complaint alleges that on the 23d day of November, 1883, William A. Martin, then the husband of this plaintiff, became a member of the Equitable Accident Association of Binghamton and received a policy of insurance in which the association " undertook and agreed, among other things, to pay to this plaintiff, wife of said assured, the sum realized upon an assessment made in accordance with the provisions of its by-laws, not exceeding $5,000, within sixty days after the filing with the said association due proof that said William A. Martin had sustained bodily injuries, effected through external, violent and accidental means, which injuries alone occasioned his death within ninety days from the happening thereof." The complaint further alleged that William A. Martin, on the 27th of April, 1889, while the policy was in force, " sustained an accidental injury from which he died on or about May 10, 1889, and that the sum realized upon an assessment

made in accordance with the provisions of said policy and by-laws at the time of said accident far exceeded the sum of $5,000." It was alleged that the claim under said policy became due and payable about July 25, 1889, and that the same was not paid, and that the plaintiff, July 30, 1889, commenced an action against the association on the policy, and that a defense was interposed by the association, and the action was for a long time contested "under the charge or direction of the above-named defendants;" that a trial was had at the Broome Circuit November, 1892, and a verdict rendered for the plaintiff, and a judgment entered thereon in favor of the plaintiff against the association on the 19th of November, 1892, for the sum of $6,466.70, and that an execution was issued on the judgment to the sheriff of Broome on the 13th of March, 1893, and returned wholly unsatisfied prior to the commencement of this action. The plaintiff further alleges that at the times hereinbefore mentioned the United States Mutual Accident Association of the city of New York was a corporation organized under the laws of the State and engaged in carrying on an accident insurance business. "That the said Charles B. Peet was the president, said James R. Pitcher was the secretary and general manager of, and the said William Bro Smith was the attorney for said association, and that they were the persons principally interested in the conduct and management of said association, financially and otherwise." The complaint alleges that on the 1st of November, 1889, the defendants Peet, Pitcher and Smith "made an arrangement and entered into a contract with" Dunn, Ross, Arnold and Murray, claiming to represent the Equitable Accident Association, "by which it was, among other things, agreed that said Dunn, Ross, Arnold and Murray would transfer, attempt to transfer or cause to be transferred to said defendants the membership or risks of the said Equitable Accident Association, the same to be reinsured by said defendants or in said United States Mutual Accident Association, and that said Equitable Accident Association should discontinue its business, and that they * * * would assign, transfer and set over to said defendants any and all interest, contract rights and privileges which they or either of them had in or to the business and management of the said Equitable Accident Association; that in consideration of said transfer of said mem-

bership and said other interests, and of said discontinuance of said insurance business, and for other good and valuable considerations, the said defendants, on their part, undertook and agreed that they would settle, adjust and pay all liability and demands against said Equitable Accident Association." Plaintiff then alleges that her claim was one of the liabilities of the said Equitable Accident Association "which said defendants undertook and agreed to settle and pay as aforesaid ; that payment of the same was only demanded of said defendants prior to the commencement of this action."

The defendants in their answer deny many of the allegations of the complaint, and they admit the execution of an agreement on November 1, 1889, with Dunn, Ross, Arnold and Murray, and they allege that the Equitable Accident Association was a mutual benefit association, and that its by-laws, as well as each certificate, provided that any person claiming thereunder should, in the event of liability be entitled to "receive only such sums as might be realized upon a single assessment upon the members of said association at the time of the *happening of the accident,* made in accordance with the provisions of said certificate and by-laws, not exceeding the sum specified in such certificate, and that no such assessment has been made by said Equitable Accident Association for the payment of said alleged certificate, or proceeding taken or even demand made theefor."

Upon the trial evidence was given to the effect that the Equitable Accident Association "has not been legally wound up. The directors and officers stand the same now as when the association discontinued business." Plaintiff offered in evidence the judgment roll in the case of Eliza A. Martin against the Equitable Accident Association of Binghamton, which was filed in the Broome county clerk's office November 18, 1892, and an execution issued on that judgment and its return unsatisfied. Evidence was given to the effect that Dunn, Ross, Arnold and Murray had no "interest, rights or privileges" other than a portion of the salary which went to the secretary

Plaintiff rests her right to recover against the defendants in this action upon the language of the agreement of the 1st day of

November, 1889, executed by the defendants, as parties of the first part, with Dunn and his associates as parties of the second part. That agreement enumerates certain debts and liabilities which the defendants undertook to discharge, and contained a provision to "indemnify and save harmless all and singular the said parties of the second part from any and all damages, costs and expenses of every kind, arising by reason of the said parties of the second part having become sureties on the said undertakings on said appeal from said judgments." Then follows the language which the plaintiff relies upon and rest the claim made by the plaintiff against the defendants. The language found in the agreement is as follows : "It is further agreed by said first parties that they will indemnify and save harmless the said second parties and all other offcers and directors of said association from any and all liability in connection with said association, except indebtedness of the said association to officers and directors. It is further agreed by said first parties that they will settle and adjust all liabilities of said association, and save said second parties harmless from any actions which may be brought wholly or in part by reason thereof, and that the parties of second part will retain their positions respectively and act therein under direction and control of parties of the first part until such time as the affairs of the Equitable Accident Association can be wound up." It is to be observed that the language quoted does not use the word "pay" or "liquidate." It is contended, however, that the words "will settle and adjust all liabilities of said association, and save said second parties harmless from any actions which may be brought wholly or in part by reason thereof," are equivalent to a promise on the part of the defendants to pay the debts of the association, and especially the claim held by the plaintiff. It is now well settled that, in order to establish a liability against a party making a contract to a third party not named therein, there must be a clear intention evinced to give a right of action to such third party.

In *Beveridge* v. *N. Y. E. R. Co.* (11 N. Y. 1, 26) Gray, J., in writing the opinion, says : "Within the principles of adjudged cases in this court, where the plaintiff seeks to base his right to maintain his action against a third party upon contract made between that party and another, it must be one made or intended for his benefit. Such a beneficial intent must be clearly found in the agreement.

\* \* \* But in all of the cases which I have examined, where the action was sustained, the facts showed that the promise clearly was for the third person's benefit, and made with that distinct intention." After a careful study of the agreement now brought in judgment, we are of the opinion that the requirements of the rule are not answered by the agreement before us. After considering the agreement in the light of the surrounding circumstances, we are of the opinion that the agreement made by the defendants was one of indemnity and not a contract to pay the claim of the plaintiff or of any other parties similarly situated. (10 Am. & Eng. Ency. of Law, 402, § 1; *Feist* v. *Schiffer*, 79 Hun, 275.)

Appellant calls our attention to *Brown* v. *Curran* (14 Hun, 260). The language of the contract under construction there, was much broader than the language found in the contract before us. The co-partnership had existed and its interests were inventoried and sold to the defendant for $6,000, who agreed " to settle, satisfy and pay all debts against the said firm of L. Richards & Co. mentioned in a certain schedule." In that case it was very clear that the promise was made for the benefit of the third person who sought to recover one of the debts mentioned in the schedule. We think the case is quite unlike the one now in hand and does not aid the contention of the appellant.

Appellant calls our attention to *Butts* v. *Wood* (37 N. Y. 317). That was an action brought by a stockholder in his own behalf and in behalf of the other stockholders against certain trustees for an alleged fraud and to recover damages sustained by the plaintiff by reason thereof. In the case before us, there are no averments in the complaint of fraud or fraudulent practices on the part of the defendants in this action, and the doctrine of the case stated has no application to the case in hand.

Our attention is invited to *Riordan* v. *First Presbyterian Church* (6 Misc. Rep. 84). In that case the language in the agreement was " will pay and discharge any and all charges and expenses for medical attendance and advice," etc. And upon the evidence in that case it was very clearly made to appear that the promise was made for the benefit of the plaintiff, and it fell within the doctrine of *Garnsey* v. *Rogers* (47 N. Y. 233) and *Beveridge* v. *N. Y. E. R. Co.* (112 id. 26).

In the case in hand there is no proof sufficient to indicate that, at the time the contract was made by the defendants, Dunn, Ross, Murray and Arnold were, or any one of them was, personally liable to the plaintiff for the amount of her claim against the association. (*Carrier* v. *United Paper Company*, 73 Hun, 287; *Durnherr* v. *Rau*, 135 N. Y. 219; *Binghamton Savings Bank* v. *Binghamton Trust Co.*, 85 Hun, 75, 80; S. C., 32 N. Y. Supp. 657, 660.)

The foregoing views lead to the conclusion that the nonsuit was properly granted.

The judgment and order must be affirmed, with costs.

MARTIN and MERWIN, JJ., concurred.

Judgment and order affirmed, with costs.